**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

NICOLE HAGER,

Plaintiff,

v. CIVIL ACTION NO. 2:20-cv-00020

COUNSELOR KNOX, et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is West Virginia Division of Corrections and Rehabilitation's ("WVDCR") and Renea Stubblefield's (collectively "Defendants") Motion for Summary Judgment. (ECF No. 96.) For the reasons explained more fully below, the Court **GRANTS** Defendants' motion.

*I. BACKGROUND*

This matter arises out of the alleged sexual assault of Plaintiff Nicole Hager ("Plaintiff" or "Hager") by Defendant Counselor Knox ("Knox") while she was incarcerated at Huntington Work Release Center ("HWRC"). (ECF No. 97 at 1.) Prior to its closure in November of 2017, HWRC was a facility operated by WVDCR that housed incarcerated men and women as they transitioned from prison. (ECF No. 116 at 3.) At the time of the alleged sexual assault, Defendant Stubblefield was employed at HWRC, held the position of "Corrections Work Release Manager," and was a supervisor of Knox—who was employed as a case manager. (ECF No. 97 at 1–2.) Knox, who was hired on or about October 14, 2015, was not directed to complete psychological

testing prior to his employment. (ECF No. 116 at 3.) However, the position of "corrections case manager" at HWRC does not require pre-employment psychiatric testing. (*See* ECF No. 96-2.)

Hager alleges that Knox was assigned to counsel exclusively male inmates at HWRC, and was explicitly directed to refrain from counseling or meeting privately with female inmates. (*Id.*) Despite this instruction, Hager alleges that on September 20, 2016, Knox requested that Hager come into his office, closed the door, physically held her against her will, and sexually assaulted her. (*Id.*) Following the alleged sexual assault, Hager revealed the abuse to her sister, who then called the WVDCR Prison Rape Elimination Act hotline on September 22, 2016 to report the incident. (*Id.*) On September 25, 2016, Knox resigned from his position with no termination or other discipline. (*Id.*)

Hager alleges that Stubblefield's oversight of HRWC staff emboldened Knox and other like-minded staff to engage in misconduct and sexual abuse of female inmates at HWRC. (*Id.* at 3, 16–17, 19). First, Hager alleges that on April 4, 2016, an inmate became "pregnant by an unknown black inmate," and "hit herself in the stomach causing a miscarriage." (*Id.* at 3.) Hager alleges the inmate's fetus was discarded by another officer at HWRC. (*Id.*) Second, Hager alleges that on April 15, 2016, "C.O. Chris Freeman [sold] heroin and cell phones to inmates in HWRC," and was allowed to resign by Stubblefield in lieu of termination. (*Id.*) Third, Hager alleges that several other instances of staff sexual abuse of inmates occurred at HWRC—none involving Knox—under the supervision of Stubblefield. (*Id.* at 16.) In particular, Hager describes several instances of sexual assault that were allegedly known by Stubblefield to have occurred, but, according to Hager, were not properly addressed by Stubblefield. (*Id.* at 16–19.)

Hager's Second Amended Complaint seeks to "redress the deprivation of [Hager's] rights, privileges and immunities protected by the Constitution and laws of the United States of America, 42 U.S.C. § 1983, and otherwise, and asserts claims arising from statutes, promulgated rules and the common law of the State of West Virginia." (ECF No. 60 at 1.) The Second Amended Complaint alleges five, somewhat unclear and confusing counts against Defendants—each count containing several purported causes of action. (*Id.* at 1–4.) Hager's Response[1] is equally puzzling insofar as she never clearly articulates the precise causes of action she alleges against Defendants. (ECF No. 116.) Nevertheless, based upon a review of both the Second Amended Complaint and Hager's Response, Hager appears to allege at least eight causes of action against Defendants:

a. negligence as to Defendants' hiring, training, supervision, and retention of Knox

b. negligence as to WVDCR's hiring, training, supervision, and retention of Stubblefield;

c. negligence as to Defendants' failure to protect Hager or otherwise intervene;

d. negligence as to Defendants' failure to comply with various State regulations enacted to protect inmates;

e. negligent infliction of emotional distress;

f. intentional infliction of emotional distress[2];

[1] The Court notes that Plaintiff filed her Motion to Exceed Page Limit, (ECF No. 110), on September 22, 2021. Insofar as this motion is unopposed by Defendants, the Court **GRANTS** this motion. That said, upon review of Plaintiff's 35-page Response—which is pervaded with twelve consecutive pages of Plaintiff's deposition transcript without explanation as to the relevance of any particular portion, a copy of an affidavit signed by another inmate housed at HWRC, a three-page copy of a WVDCR Policy Directive, and multiple stylistic errors—the Court notes that had Plaintiff's counsel simply attached these items as exhibits to the brief, rather than using them wholesale throughout, this motion never would have been required. Future briefs filed in such condition may well be stricken by this Court.

[2] In her Second Amended Complaint, Hager explicitly acknowledges she is not seeking punitive damages from WVDCR for her IIED claim. (ECF No. 60 at 10.)

g. deliberate indifference, pursuant to Section 1983, amounting to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment as to Stubblefield; and

h. vicarious liability as to WVDCR for Stubblefield's negligent acts completed within the scope of employment.

Hager makes several concessions and stipulations in her Second Amended Complaint and Response. First, Hager explicitly concedes in her Second Amended Complaint that "[n]o claims are asserted against [WVDCR] under [Section 1983] as the agency is not a person[.]" (*See* ECF No. 60 at 10.) She also stipulates in her Response that "neither the State of West Virginia, its agencies, nor its officials, acting in their official capacities, are 'persons' under [Section] 1983." (ECF No. 116 at 2, ¶ 1.) Second, Hager stipulates in her Response that "liability premised on the doctrine of *respondeat superior* is not applicable to claims where the underlying act is a criminal act," and that "sexual acts by Knox . . . were acts outside Knox's scope of employment, as they were criminal acts." (*Id.* at ¶¶ 2, 4.) Finally, Hager stipulates that "the West Virginia Constitution does not independently give rise to a claim for money damages." (*Id.* at ¶ 3.)

Defendants filed their Motion for Summary Judgment on August 13, 2021. (ECF No. 96.) On August 20, 2021, the Court granted Plaintiff's Motion to Extend Time Frames, (ECF No. 100), thereby extending the time frame to respond to dispositive motions to September 30, 2021. (ECF No. 103.) Plaintiff filed her Response on September 30, 2021. (ECF No. 116.) Defendants filed their Reply on October 7, 2021. (ECF No. 117.) Accordingly, Defendants' motion has been fully briefed, and is now ripe for adjudication.

## *II. LEGAL STANDARD*

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment.

This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When evaluating such factual issues, the Court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

## *III. DISCUSSION*

Defendants move this Court to grant summary judgment in their favor as to all of Hager's claims against them. (ECF No. 97 at 1.) As noted above, it is not immediately clear on the face of Hager's Second Amended Complaint what precise claims she alleges against Defendants. Nevertheless, after a careful review of both Hager's Second Amended Complaint and her Response, it appears Hager alleges at least one cause of action for violations of rights conferred to her under the United States Constitution against Stubblefield—and potentially WVDCR—pursuant to Section 1983, with the remaining claims arising under West Virginia law. Accordingly, the Court will first address Hager's federal claims against Defendants, and thereafter address her state-law claims.

### *A. Hager's Claims Under Section 1983*

Defendants contend they are entitled to summary judgment on Hager's claims under the United States Constitution and Section 1983 for three reasons. First, Defendants contend they are entitled to summary judgment on Hager's Section 1983 claims because they are not "persons" capable of being sued under Section 1983. (ECF No. 97 at 3–4.) Second, Stubblefield argues she is entitled to summary judgment on Hager's Eighth Amendment deliberate indifference claim because she had no actual or constructive knowledge that Knox was engaged in conduct that posed a "pervasive and unreasonable risk" of constitutional injury to citizens like Hager. (*Id.* at 6.) Third, Defendants argue they are entitled to summary judgment on Hager's Section 1983 claims under the doctrine of qualified immunity. (*Id.* at 8–9.) The Court will begin its discussion by examining Defendants' argument regarding the statutory definition of "person" under Section 1983, before assessing whether they are entitled to qualified immunity.

1. Whether Defendants Are "Persons" Under Section 1983

Defendants first argue they are entitled to summary judgment on Hager's Section 1983 claims because they are not "persons" capable of being sued within the meaning of Section 1983. (*Id.* at 3–4.) Section 1983 is not itself the source of any substantive rights. Rather, it provides a "method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979). Section 1983 provides, in relevant part, as follows:

> Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law.

42 U.S.C. § 1983 (emphasis added). Thus, a plaintiff's claim under Section 1983 must meet two essential elements: (1) it must allege the violation of a right secured by the Constitution and laws of the United States; and (2) it must show that the alleged deprivation was committed by a "person" acting under color of state law. *Crosby v. City of Gastonia*, 635 F.3d 634, 639 (4th Cir. 2011) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

The United States Supreme Court has held that municipalities and municipal officials sued in their official capacities are "persons" capable of being sued pursuant to Section 1983. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). However, the Supreme Court later clarified that states, state agencies, and state officials sued in an *official capacity* cannot be sued for monetary damages under Section 1983, reasoning that such entities and officials are not "persons" within the meaning of Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). By contrast, state officials sued in their *individual* capacities are "persons" for

purposes of Section 1983. *Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("A government official in the role of a personal-capacity defendant thus fits comfortably within the statutory term 'person.'")

Hager explicitly states in her Second Amended Complaint that she asserts no claims against WVDCR under Section 1983. (*See* ECF No. 60 at 10.) Moreover, in her Response, Hager stipulates that WVDCR, as an agency of the State of West Virginia, is not a "person" within the meaning of Section 1983. (See ECF No. 116 at 2.) Therefore, to the extent Hager argues that a Section 1983 claim stands against WVDCR, the Court **GRANTS** summary judgment to WVDCR with respect to such a claim because WVDCR—as an agency of the State of West Virginia—is not a "person" capable of being sued under Section 1983.

Hager does allege at least one cause of action pursuant to Section 1983 against Stubblefield for "deliberate indifference" amounting to a violation of the Eighth Amendment to the United States Constitution. (*See* ECF No. 60 at 4–5, ¶ 14.) Hager brought this lawsuit against Stubblefield both individually and in her official capacity as the Administrator of HWRC. (*Id.* at 1.) To the extent Hager alleges a Section 1983 claim against Stubblefield in her official capacity, such a claim must fail because Stubblefield, who held the position of "Corrections Work Release Manager" at HWRC, was an official of WVDCR—an agency of the State of West Virginia. Thus, it follows that Stubblefield, in her official capacity, does not fall within the statutory definition of "person" under Section 1983. *See Will*, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."). Accordingly, because Stubblefield, in her official capacity, does not fall within the statutory definition of "person" under Section 1983,

the Court **GRANTS** summary judgment to Stubblefield with respect to Hager's Section 1983 claims against her in an official capacity.

To the extent Hager alleges a Section 1983 claim against Stubblefield in her individual capacity, such a claim would not be prohibited by the statutory definition of "person" under Section 1983. As noted above, the Supreme Court has held that state officials sued in their individual capacities are "persons" within the statutory meaning of Section 1983 and may be sued under that statute. *See Hafer*, 502 U.S. at 27. Therefore, to the extent Hager alleges a cause of action against Stubblefield in her individual capacity under Section 1983, such a claim could stand because, in her individual capacity, Stubblefield is a "person" within the meaning of Section 1983.

2. <u>Qualified Immunity—Section 1983</u>

Having found that Stubblefield, in her individual capacity, is a "person" within the meaning of Section 1983, the Court next considers whether she is entitled to qualified immunity with respect to Hager's Section 1983 deliberate indifference claim. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Therefore, to overcome qualified immunity a plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To be "clearly established," a right must be sufficiently clear "that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741. District courts have discretion

to decide which of the two prongs of qualified immunity analysis to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Hager alleges Stubblefield deprived her of her right to be free from cruel and unusual punishment arising under the Eighth Amendment to the United States Constitution while she was incarcerated at HWRC. (ECF No. 116 at 28–29.) Specifically, Hager alleges Stubblefield acted with deliberate indifference to the "unconstitutional conditions of confinement [that] persistently exist[ed] at HWRC, prior to Hager's victimization." (*Id.* at 29.)

Supervisors may be liable for the actions of their subordinates where the supervisor, by her own conduct, was deliberately indifferent to or tacitly authorized or approved prior constitutional violations. *See Shaw v. Stroud*, 13 F.3d 791, 798–99 (4th Cir. 1994). Such liability is not based upon *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). The Fourth Circuit recently recited the following elements necessary to establish a supervisor's liability under Section 1983:

> [A] supervisor can be liable where (1) [she] knew that [her] subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury;" (2) [her] response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link" between [her] inaction and the constitutional injury.

*King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016). A prison official's "actual subjective awareness" of an excessive risk of harm or safety is required to hold the official liable under the Eighth Amendment. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (holding that "a prison official may be held liable under the Eighth Amendment . . . only if [she] knows that inmates face

a substantial risk of serious harm"). Thus, Hager assumes a heavy burden: she not only must demonstrate that that she faced a pervasive and unreasonable risk of harm from some specified source, but she must also show that Stubblefield's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practices. *Slakan*, 737 F.2d at 373.

Here, Hager has adduced no evidence demonstrating that Stubblefield knew, prior to the alleged sexual assault, that her subordinate—Knox—was engaged in any sort of conduct that posed a pervasive and unreasonable risk of constitutional injury to her. Hager has produced no evidence demonstrating any misconduct by Knox prior to the alleged sexual assault; she has produced no evidence demonstrating that other inmates had made any allegations of misconduct or sexual abuse against Knox prior to the alleged sexual assault; and she has produced no evidence that Knox had received any disciplinary actions for related conduct. Rather, in conclusory fashion, Hager contends that "[t]he facts and circumstances existent in this civil action are such that a jury could find Stubblefield be held liable for allowing unconstitutional conductions of confinement to persistently exist at HWRC, prior to Hager's victimization." (ECF No. 116 at 29.)

Absent any evidence that Stubblefield had actual or constructive knowledge that Knox posed a "pervasive and unreasonable risk" of constitutional injury to her, Hager's supervisory liability claim under Section 1983 must fail. Because Hager cannot establish supervisory liability on the part of Stubblefield, it follows that she has failed to establish that Stubblefield violated her rights arising under the Eighth Amendment. Therefore, because Hager has failed to establish that Stubblefield violated any of her constitutional rights, qualified immunity shields Stubblefield from civil liability with respect to Hager's Section 1983 claims against her in her individual capacity.

Accordingly, the Court **GRANTS** summary judgment to Stubblefield with respect to Hager's Count One Section 1983 deliberate indifference claim.

*B. Hager's State Law Claims*

Hager's remaining claims against Defendants arise under West Virginia law. Specifically, Hager alleges several negligence claims against Defendants, an intentional infliction of emotional distress claim against Defendants, and a vicarious liability claim against WVDCR. Each of Hager's claims will be addressed in turn.

1. Negligence Claims

Although Hager's Second Amended Complaint is unclear as to the precise causes of action she alleges, Hager appears to allege several negligence claims against Defendants in Counts One, Three, and Five. (ECF No. 60 at 4–10.) Based upon a review of her Second Amended Complaint and Response, it appears to the Court that the following negligence claims have been alleged by Hager against Defendants:

a. negligence as to Defendants' hiring, training, supervision, and retention of Knox;

b. negligence as to Defendants' failure to protect Hager or otherwise intervene;

c. negligence as to Defendants' failure to comply with various State regulations enacted to protect inmates;

d. negligence as to WVDCR's hiring, training, supervision, and retention of Stubblefield; and

e. negligent infliction of emotional distress.

(ECF Nos. 60, 116.)

Defendants argue the Court should grant summary judgment in their favor with respect to Hager's negligence claims because they are entitled to state-law qualified immunity. (ECF No.

97 at 9.) The doctrine of qualified immunity was explained by the West Virginia Supreme Court in Syllabus Point 6 of its opinion in *Clark v. Dunn* as follows:

> In the absence of an insurance contract waiving the defense, the doctrine of qualified immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Torts Claims and Insurance Reform Act, . . . , and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.

Syl. Pt. 6, 465 S.E.2d 374 (W. Va. 1995). To the extent that governmental acts or omissions which give rise to a cause of action fall within the category of "discretionary functions," a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known. Syl. Pt. 11, *W. Va. Reg'l Jail & Corr. Auth. v. A.B.*, 766 S.E.2d 751 (W. Va. 2014). "[T]he broad categories or training, supervision, and employee retention . . . easily fall within the category of 'discretionary' governmental functions." *A.B.*, 766 S.E.2d at 773. Hager does not contest that each of her negligence claims against Defendants are based solely on acts by correctional staff who were performing discretionary functions. Thus, the issue with respect to state-law qualified immunity is whether Defendants' acts, which fall within the category of "discretionary functions," violate any clearly established law.

Hager contends that Defendants violated clearly established state regulations which govern certain aspects of the training, supervision, and retention of jail employees. (ECF No. 116 at 20.) In support of her argument that Defendants violated clearly established law, Hager directs the Court to the United States Constitution; Article III, Section 5 of the West Virginia Constitution, which guarantees her right to be free from infliction of cruel and unusual punishment; and several WVDCR "policy directives." (ECF No. 116.) Specifically, in her Second Amended Complaint,

Hager alleges Defendants violated the following "policy directives" and regulations: (1) Policy Directive 132.01—failure to conduct psychological testing of Knox prior to his employment; (2) Policy Directive 135.00—failure to comply during pre-employment processing; (3) Policy Directive 129.24 and 143 C.S.R. 1—failure to impose progressive discipline; (4) Policy Directive 332.00—failure to protect inmates from harm; (5) Policy Directives 332.00, 332.01, and 332.02—failure to provide enhanced supervision of Knox; and (6) Policy Directive 332.05—failure to deploy "video monitoring" and to conduct and document unannounced rounds to identify and deter staff sexual abuse and sexual harassment. (ECF No. 60 at 5–8.) Aside from conclusory statements that Defendants violated these policy directives and regulations, Hager offers no factual or evidentiary connection between Defendants' alleged negligence and the sources of law cited by Hager.

Between her Second Amended Complaint and her Response, Hager alleges several instances of alleged misconduct by correctional officers employed at HWRC, including several instances of alleged sexual assault, on the part of HWRC staff. (ECF Nos. 60 at 7–8, 116 at 16–19.) Although the examples cited by Hager may amount to violations of clearly established law on the part of those particular offending correctional officers, Hager fails to establish a factual connection between those examples and any alleged violations of the policy directives on the part of Defendants. *See A.B.*, 766 S.E.2d at 776 (noting that the plaintiff could not identify a single policy, procedure, rule, regulation, or statute which the WVRJCFA—and not the correctional officer—violated). Moreover, aside from conclusory allegations with no particularity that Defendants violated WVDCR policy directives, Hager does not allege with any particularity how

Defendants were negligent in their hiring, training, supervision, or retention of Knox, or how Defendants were negligent in their handling of the examples cited by Hager.

Hager has also failed to adduce any evidence showing that WVDCR violated any clearly established law for its alleged negligent hiring, supervision, and retention of Stubblefield. Hager does not even attempt to cite any particular laws, regulations, or WVDCR policy directives that were violated to show that WVDCR negligently hired, supervised, and retained Stubblefield.

Hager does attempt to connect Defendants' failure to subject Knox to pre-employment psychiatric testing to the alleged deprivation of her rights. (ECF No. 116 at 27–28.) Hager cites the West Virginia Supreme Court of Appeals' decision in *Harrah v. Leverette* to support her argument that Defendants' failure to subject Knox to pre-employment psychiatric testing constitutes the violation of clearly established law, which resulted in the deprivation of her rights. 271 S.E.2d 322 (W. Va. 1980). However, the rule from this case requiring pre-employment psychiatric testing is only applicable to "correctional officers." *Id.* at 332. As Defendants aptly note, insofar as Knox was employed as a "correctional case manager," which is a separate and distinct position from "correctional officer," he was not required to undergo pre-employment psychiatric testing under this rule. (*See* ECF No. 96-2.) As such, Hager's attempt to connect Defendants' decision to forgo pre-employment psychiatric testing of Knox to the alleged deprivation of her rights is unavailing.

Therefore, because Hager's allegations that Defendants violated various policy directives are merely conclusory and lack any particularity, Hager has failed to sufficiently demonstrate that Defendants violated any clearly established law. As Hager's negligence claims against Defendants target "discretionary governmental functions" and Hager has not sufficiently shown

that Defendants violated any clearly established law, Defendants are entitled to qualified immunity on these claims. Accordingly, the Court **GRANTS** summary judgment to Defendants with respect to each of Hager's Counts One, Three, and Five negligence claims.

2. Intentional Infliction of Emotional Distress

Next, in Counts Two and Three of her Second Amended Complaint, Hager alleges claims of intentional infliction of emotional distress ("IIED") against Defendants. (ECF No. 60 at 8–9.) To prevail on an IIED claim under West Virginia law, a plaintiff must establish four elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. Pt. 3, *Travis v. Alcon Lab'ys, Inc.*, 504 S.E.2d 419 (W. Va. 1998).

Defendants argue that Hager has failed to produce evidence that they "acted with the intention to inflict the emotional distress alleged." (ECF No. 97 at 13.) Conversely, Hager argues—once again, in conclusory fashion—that "[t]he relevant facts and circumstances sufficiently support [] Hager's IIED claim" against Defendants. (ECF No. 116 at 32.) Without any further explanation or elaboration, Hager cites a Memorandum Opinion and Order entered by Judge Chambers in *Hammonds v. Wolfe*, 3:18-cv-01377, 2020 WL 1243609 (S.D. W. Va. Mar. 13, 2020), presumably in support of her argument that her IIED claim survives Defendants' Motion for Summary Judgment. (*Id.* at 31–32.)

Consistent with other portions of her written submissions, Hager does not explain why this Memorandum Opinion and Order is relevant to the resolution of Defendants' motion.

Nevertheless, it is important to note that the court's opinion in *Hammonds* concerned the resolution of the defendant's motion to dismiss, which challenged the plaintiff's claims under the plausibility standard. *See Hammonds*, 2020 WL 1243609, at *3. Here, Defendants' motion challenges Hager's claims at the summary judgment stage—which requires Hager to "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. The test is whether a reasonable jury could find for Hager. *Id.* at 252.

Based upon the parties' briefings, no reasonable jury could conclude that Defendants acted intentionally to inflict emotional distress upon Hager, or that they acted recklessly when it was certain or substantially certain emotional distress would result from their conduct. Hager has set forth no evidence establishing the requisite level of intent for her IIED claim to survive. Rather, she summarily alleges that "a reasonable jury could conclude Stubblefield's ongoing acts and omissions in the administration of HWRC, by turning a blind eye to consistent and protracted staff misconduct," is sufficient to establish a claim of IIED. Hager fails to produce any evidence that those alleged acts and omissions were done with the requisite level of intent for her IIED claim to survive. Hager has failed to produce any evidence that it was, at the very least, certain or substantially certain that Knox's sexual assault of her would result from Defendants' administration of the HWRC, let alone that Defendants intended to cause Hager severe emotional distress through their administration of HWRC.

Therefore, absent any specific factual allegations showing that there is a genuine issue as to whether Defendants intended to inflict emotional distress upon Hager, or that they acted recklessly when it was certain or substantially certain emotional distress would result from their conduct, summary judgment in Defendants' favor is appropriate with respect to Hager's IIED

claims. Accordingly, the Court **GRANTS** summary judgment to Defendants with respect to Hager's Counts Two and Three IIED claims.

3. Vicarious Liability—WVDCR

Finally, WVDCR argues that the Court should grant it summary judgment with respect to Hager's vicarious liability claim. (ECF No. 117 at 2–3.) In Count Five of her Second Amended Complaint, Hager "asserts a scope of employment claim against [WVDCR] as vicariously liable for the negligent acts and omissions of [] Stubblefield, under the doctrine of *respondeat superior*." (ECF No. 60 at 10.) However, as explained above, Stubblefield is entitled to qualified immunity with respect to Hager's negligence claims against her because Hager has failed to produce evidence showing that Stubblefield violated a clearly established right. Therefore, because Hager has failed to produce evidence showing that Stubblefield violated a clearly established right, no legal theory exists to hold WVDCR vicariously liable for Stubblefield's alleged actions or omissions. Thus, summary judgment in WVDCR's favor is warranted with respect to Hager's vicarious liability claim against it. Accordingly, the Court **GRANTS** summary judgment to WVDCR as to Hager's Count Five vicarious liability claim.

## *IV. CONCLUSION*

For the reasons explained more fully above, Defendants' Motion for Summary Judgment, (ECF No. 96), is **GRANTED** in its entirety, and Hager's claims against them are **DISMISSED WITH PREJUDICE**. Hager's Second Amended Complaint alleges the following causes of action against Defendant Knox: (1) Count One—violations of the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, (ECF No. 60 at 4, ¶¶ 11–13); and (2) Count Two—intentional infliction of emotional distress. (*Id.* at 8, ¶¶ 22–25.) Insofar as Defendant Knox has

not moved for summary judgment with respect to the claims made against him, these claims remain.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: November 8, 2021

THOMAS E. JOHNSTON, CHIEF JUDGE